UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

RAVENDRA SAMARU,

                 *Plaintiff*,

       -*against*-

COMMISSIONER OF SOCIAL SECURITY;

                 *Defendant*.

----------------------------------X

**MEMORANDUM & ORDER**

18-cv-06321(KAM) (LB)

**KIYO A. MATSUMOTO, United States District Judge:**

         Pursuant to 42 U.S.C. § 405(g), Ravendra Samaru ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant") which held that plaintiff was not disabled within the meaning of the Social Security Act ("the Act") and, therefore, was not eligible for disability insurance benefits under Title II of the Act or supplemental security income benefits under Title XVI of the Act. (ECF No. 1, Complaint ("Compl.") at ¶ 1.)  Plaintiff alleges that he is disabled under the Act and is thus entitled to receive the aforementioned benefits.

         Before the court is plaintiff's motion for judgment on the pleadings seeking a finding of disability or a remand for further administrative proceedings. (ECF Nos. 15 and 16) Defendant's cross-motion for judgment on the pleadings seeks to confirm the Commissioner's determination.  (ECF Nos. 17 and 18).

For the reasons set forth below, plaintiff's motion is GRANTED, defendant's cross-motion is DENIED, and the case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### a. Procedural History

On April 1, 2015, plaintiff Ravendra Samaru filed an application for disability insurance benefits, as well as an application for supplemental security income benefits.  (ECF No. 21, Administrative Transcript ("Tr.") at 59-60, 167-79, 190.)[1] The date of alleged onset of plaintiff's disability is January 1, 2014. (Tr. 12, 62, 168, 171.)  Plaintiff claims he is disabled as a result of his paranoid schizophrenia.  (Tr. 33, 312.)

On July 15, 2015, the Social Security Administration ("SSA") denied both of plaintiff's applications on the grounds that he was not disabled within the meaning of the Act because his "condition is not severe enough to keep [plaintiff] from working."  (Tr. 75-80, 82.)  On September 4, 2015, plaintiff, via his authorized representative, Barbara D. Tilker, filed a written request for a hearing before an Administrative Law Judge ("ALJ").  (Tr. 86-87.)  On July 25, 2017, plaintiff appeared and

---

[1] The Certified Administrative Record, is available at ECF No. 21, ECF pp. 1-475. "Tr." refers to the correspondingly numbered page in the record.

testified before ALJ Lawrence Levey at the National Hearing Center in Baltimore, Maryland.  (Tr. 24-58.)  Plaintiff appeared and testified via videoconference, along with his attorney, William Aronin, in the Jamaica, Queens Hearing Office. (Tr. 26, 160.)  Vocational expert Deborah Vonduram also provided testimony over the phone at the hearing.  (*Id.*)  By a decision dated August 1, 2017, the ALJ found that plaintiff was not disabled within the meaning of the Act and thus was not entitled to benefits.  (Tr. 12-20.)

On September 29, 2017, plaintiff appealed the ALJ's decision to the Appeals Council.  (Tr. 161.)  On September 6, 2018, the Appeals Council denied review of the decision, rendering the ALJ's decision final.  (Tr. 1.)  On November 7, 2018, plaintiff filed the instant action in federal court.  (*See generally* Compl.)

### b. Relevant Facts

The parties filed a Joint Stipulation of Relevant Facts on July 10, 2019, pursuant to Individual Motion Practice Rule IV(C)(5).  (ECF No. 20.)  The court incorporates those facts herein.  Having incorporated the relevant facts, the court shall address only the medical opinions and any other evidence and facts specifically germane to the ALJ's decision.

### 1. <u>Non-Medical Evidence</u>

<u>Adult Function Report</u>

In a function report dated May 26, 2015, completed by plaintiff's brother, Avienash Samaru, plaintiff's brother described plaintiff as "in bed all the time" and stated that he "only gets up to eat, use the bathroom, and go to the store." (Tr. 205.)  Mr. Avienash Samaru further reported that plaintiff's medication makes plaintiff "sleep a lot," and that before the onset of his disability, plaintiff had been a "skilled construction worker with a family."  (*Id.*) Additionally, he reported that plaintiff requires reminders for his appointments and "important tasks" such as showering and changing his clothing.  (Tr. 206.)  Plaintiff's brother also reported that plaintiff does not do any chores, and his mother cooks for him.  (Tr. 206-07.)  Plaintiff's brother further reported that plaintiff can drive, go out alone, and go to stores to purchase cigarettes and food. (Tr. 205, 207-08.) Plaintiff can pay bills, count change, and handle a savings account.  (Tr. 208.)  Though plaintiff plays video games, he no longer plays basketball as he used to, "hardly socializes with the family," and no longer has the "same physical strength he had due to his medications, and illness." (*Id.*)  The report states that plaintiff becomes frustrated and "can not concentrate for long periods of time, or focus on complex issues." (Tr. 211.)  Further, plaintiff can follow spoken instructions, but cannot follow written instructions.  (*Id.*)

Lastly, plaintiff's brother reported that plaintiff "cannot remember things when he is frustrated" and needs constant reminders.  (*Id.*)

Hearing Testimony

At the July 25, 2017 hearing before ALJ Levey, plaintiff testified that he worked previously as a warehouse worker and in construction.  (Tr. 32.)  He stopped working in 2013, when he was diagnosed with schizophrenia, and developed a lack of concentration, forgetfulness, and impatience.  (Tr. 33.) He was hospitalized twice in or about 2015 for "hearing voices," and experiencing hallucinations that somebody was out to kill him.  (Tr. 33, 34, 252.)  Plaintiff testified that he was "afraid that somebody was out to kill me, I was crying a lot." (Tr. 34.)  Plaintiff reported hearing voices constantly, and that it was like a "microphone turn[ed] on in my head."  (*Id.*) He also described a hallucination involving a physical sensation ("spikey thing[s] all over my back").  (Tr. 34-35.)  Plaintiff reported that he is currently under psychiatric treatment at the Queens Hospital Center, where he sees Dr. Choudhury monthly, and follows a medication regimen involving daily oral medication and a monthly drug injection.  (Tr. 35-36.)  Plaintiff testified that he still hears voices or "will see something that is not there" sometimes, though his auditory and visual hallucinations have decreased due to his medication.  (Tr. 36-37, 41-42, 46.)

Plaintiff reported "difficulty concentrating and remembering things" and that he forgets things like tea kettles on the stove and his own phone number. (Tr. 36-37.) Plaintiff reported that he is not permitted to use the stove at home. (Tr. 37.) Plaintiff also stated that he sleeps "most of the time," approximately fifteen hours per day. (Tr. 38.) In 2013, plaintiff tried to return to work but was laid off because he was "not the same," and his boss found he did not listen. (Tr. 39-40, 45-46.)

Plaintiff testified that he spends time with his two children, then ages two and five, on weekends. (Tr. 43.) Plaintiff takes public transportation to go to his doctor, and he has not driven since 2014 except to move his brother's car to a new parking spot. (Tr. 44.)

Plaintiff testified that he tried to find a job in June 2015 so that his wife would come back, but plaintiff's efforts to reconcile with his wife and find employment were unavailing. (Tr. 45.) Plaintiff testified, "I really wanted – I wanted to stay in my field of work which is construction . . . . And that was something that I loved to do, I was doing since I was 16 with my father because he taught me how – how to make a living by doing his trade but it's really . . . I'm really moving slower than I thought I would. I really got to rest up and I feel like I want to go home and go to bed." (Tr. 45-46.)

When asked by the ALJ whether plaintiff thought he could do "an easier job, something where you're just at a table" or "stocking shelves," plaintiff ventured that he "probably could," except that he tired easily. (Tr. 47-48.)  When asked about the possible effects of plaintiff's lack of concentration or his drowsiness on his employment opportunities, the response was as follows:

> Q: All right. I'm glad you think so but like what about your concentration issues? What about problems with tiredness, do you think that would still cause an issue for you?
>
> A: Definitely, definitely. Sometimes I – sometimes I feel so tired, man.[2]

<u>Vocational Expert Testimony</u>

At the hearing, Deborah Vonduram, the vocational expert, testified that a hypothetical individual of plaintiff's age, education level, and work experience, with plaintiff's mental impairments and the possible side effects of prescribed medications, could not perform plaintiff's past work as a warehouse packer (medium, unskilled work) and construction worker (heavy, unskilled work).  (Tr. 51.)  Ms. Vonduram opined that, with the ALJ's assessed RFC, a hypothetical individual with plaintiff's limitations could work as a night cleaner (DOT No. 358.687-010; SVP 1), crate liner (DOT No. 920.687-078; SVP

---

[2] Tr. 47-48.

2), or electrode cleaner (DOT No. 729.687-014; SVP 1).  (Tr. 52.)  When the ALJ asked whether plaintiff's "fatigue or concentration" would be an issue, the vocational expert responded that being "off-task 5% percent of the time or more on a consistent basis," or approximately "twenty-four minutes a day," or missing one or more days of work per month on a regular basis, could jeopardize one's employment for unskilled jobs. (Tr. 53-55.)  As the ALJ noted, and the vocational expert confirmed, being off-task five percent of the workday would jeopardize an unskilled worker's job because unskilled workers are highly "replaceable" and "[a]lmost anyone off the street can do it[.]"  (Tr. 55-56.)  The vocational expert also averred that needing repeated reminders would preclude work. (Tr. 54.)

### 2. **Medical Evidence**

### a. **Contemporaneous Medical Records**

In an undated and unsigned intake assessment from Queens Hospital Center, to which plaintiff was referred following a one-month psychiatric hospitalization at Jamaica Hospital,[3] plaintiff stated, "I don't like to complain a lot," and denied having issues to hospital staff.  (Tr. 256.)  The report noted plaintiff's two prior hospitalizations, where a court-ordered medication override was needed due to plaintiff's

---

[3] The intake assessment is available at Tr. 256-259.  The bottom margin denotes that there were seven pages, while the record contains only pages one through four.

refusal to receive treatment.  (*Id.*)  Plaintiff alleged that he slept well, had a good appetite, and did not hear voices when he took his medication.  (*Id.*)  However, plaintiff's mother stated that he was isolative, pacing, "not himself," had a decreased appetite, was not sleeping, and was unresponsive to questions. (Tr. 256.)

On January 21, 2014, treatment notes from social worker, Ms. Kane LCSW, at the Queens Hospital Center, noted that plaintiff missed his appointment, and plaintiff's wife stated that it was because he was "very drowsy during the day."  (Tr. 261.)  Plaintiff saw his psychiatrist Dr. Junnun Choudhury, MD, ("Dr. Choudhury"), along with Ms. Kane, once per month.  (Tr. 265, 271.)  On February 18, 2014, Dr. Choudhury's examined plaintiff and found that he exhibited normal mood, affect, speech, thought processes, memory, and orientation.  (Tr. 268.) Though the treatment notes are difficult to discern, they appear to indicate that plaintiff denied having any side effects, psychotic symptoms or a depressed mood during his monthly appointments with Dr. Choudhury between February 2014 and May 2015.  (*See generally* Tr. 265, 268, 273-300.)

Plaintiff continued to seek treatment from Dr. Choudhury between April 8, 2016 and April 12, 2017.  (Tr. 311-475.)  In his progress reports, Dr. Choudhury regularly notes that plaintiff appears stable, does not exhibit overt psychotic

symptoms, and has normal speech, behavior, mood, affect, thought processes, and that his cognition and memory are intact.  (Tr. 314-15, 324-26, 340-43, 353-55, 366-69, 371-74, 381-83, 386-89, 397-400, 402-5, 410-13, 425-27, 437-39, 451-53.)  Additionally, plaintiff did not ever exhibit signs of suicidal or homicidal ideation.  (*Id.*)  Plaintiff reported he was "fine," or "okay", and Dr. Choudhury found his mood, behavior and thought processes intact.  (*Id.*)

The reports noted, however, that plaintiff forgot his injections twice, on June 24, 2016, as well as August 9, 2016.  (Tr. 340, 353.)  Additionally, on April 12, 2017, plaintiff's mother reported to Ms. Kane that he "does not wake up for most things." (Tr. 464.)  Plaintiff also told Ms. Kane that it was difficult for him to focus and follow directions. (*Id.*)

**b. Medical Opinion Reports**

Medical Opinion of Consultative Examiner, Dr. Georgiou, Psy.D

On June 16, 2015, Dr. Toula Georgiou, Psy.D, ("Dr. Georgiou") performed a psychiatric evaluation of plaintiff. (Tr. 251-55.)  In her examination, Dr. Georgiou noted that plaintiff, a 31-year-old male, came to the evaluation by bus, accompanied by his mother; was currently unemployed, and had last worked in construction in 2012 or 2013, where he had worked for three years before being laid off.  (Tr. 252.)

Dr. Georgiou noted plaintiff's psychiatric history included two hospitalizations in 2013 for auditory and visual hallucinations due to his schizophrenia. (*Id.*) Plaintiff was hospitalized for six weeks and one month, respectively. (*Id.*) Dr. Georgiou noted that plaintiff had been in treatment at Queens Hospital Center since 2013, meeting once a month with a therapist and once a month with a psychiatrist for his schizophrenia, and that he was prescribed Haldol and Cogentin as part of his treatment plan.[4] (*Id.*)

Dr. Georgiou documented that plaintiff complained his medication made him sleepy, reporting that plaintiff slept fifteen to sixteen hours per day. (*Id.*) Plaintiff did not report any psychiatric symptoms, or suicidal or homicidal ideation, but plaintiff has a history of paranoia. (*Id.*) Dr. Georgiou opined in her report that plaintiff was cooperative, had an adequate manner of relating, and used expressive and receptive language to communicate. (Tr. 253.) Dr. Georgiou also stated that though plaintiff had a tense affect, his mood was neutral, and he demonstrated coherent and goal directed thought processes, and intact attention and concentration. (*Id.*) However, Dr. Georgiou pronounced plaintiff's memory

---

[4] According to rxlist.com, Haldol is an injectable anti-psychotic medication used to treat schizophrenia as well as to control tics and Tourette's Disorder; Cogentin is an injectable anti-Parkinson's medication.

mildly impaired, and his intellectual functioning average to below average.  (Tr. 15, 253.)

Plaintiff reported to examiner that he gets along well with family and goes out with friends.  (*Id.*)  Dr. Georgiou also reported that plaintiff can take care of his own basic hygiene, prepare simple meals, comply with a prescribed medication regimen, clean, shop, drive, use public transportation, and manage his own money.  (Tr. 253-254.)  However, Dr. Georgiou did note that plaintiff may need some assistance managing his funds. (*Id.*)  Dr. Georgiou found that plaintiff did not evidence any limitations in his ability to function daily, and that plaintiff denied all psychiatric symptoms.  (Tr. 254.)  Plaintiff also reported to the examiner that he had been smoking one joint of marijuana daily, but was no longer using drugs as of two months prior to the examination, and was consistently staying in treatment.  (*Id.*)  Dr. Georgiou concluded that the results of the examination were inconsistent with psychiatric problems that would significantly interfere with plaintiff's daily functioning.  (*Id.*)  However, Dr. Georgiou diagnosed plaintiff with "unspecific psychoses" and recommended that he continue psychiatric treatment.  (*Id.*)

Medical Opinion of Non-Examining State Psychological Consultant Dr. Harding, Ph.D.

On July 15, 2015, Dr. T. Harding, Ph.D., ("Dr. Harding") a State agency psychological consultant, reviewed the evidence in the record, and reported that plaintiff's mental impairment was not severe.  (Tr. 64-65, 307-08.)  Dr. Harding noted that plaintiff had mild limitations in his daily living, social functioning and concentration and pace. (*Id.*)

Medical Opinion of Treating Source Dr. Choudhury, MD

In a Medical Assessment of Ability to do Work Related Activities (Mental) Questionnaire, dated April 12, 2017, Dr. Choudhury opined that plaintiff had severe occupational and social impairments.  (Tr. 309-10.)  From a scale of unlimited/very good, good, fair, or poor to none, Dr. Choudhury assessed plaintiff's abilities to function in sixteen areas; in fifteen of the sixteen areas, he scored plaintiff as having a "fair" or "poor to no[]" ability.  Dr. Choudhury noted that these limitations had been present since January 2014, the alleged onset date.  (Tr. 310.)  Specifically, Dr. Choudhury opined that plaintiff had poor to no ability to follow work rules; deal with work stresses; function independently; maintain attention or concentration; understand, remember and carry out complex job instructions; understand, remember and carry out detailed but not complex job instructions; and demonstrate reliability.  (Tr. 309-10.)  Further, Dr. Choudhury reported that plaintiff had a "fair" ability to relate to co-workers;

deal with the public; use judgment, interact with supervisors; understand, remember and carry out simple job instructions; behave in an emotionally stable manner; and relate predictably in social situations. (*Id.*) He further noted that plaintiff had poor concentration and coping skills, forgets or is unresponsive to questions, was unable to wake up on time, and had disordered thoughts and limited memory. (*Id.*) In addition, he noted that plaintiff had tried to go back to work but could not focus and had to leave. (*Id.*) Dr. Choudhury noted that plaintiff was fatigued, sometimes does not comprehend questions, and does not follow instructions. (*Id.*) Lastly, he reported that plaintiff cannot manage his own benefits. (*Id.*)

### STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess*, 537 F.3d at 127.  "Substantial evidence is 'more than a mere scintilla," and must be relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Coim'r*, 692 F.3d 118, 122 (2d Cir. 2012).

<u>**DISCUSSION**</u>

### a. Five-Step Analysis for Disability Claims

To receive disability benefits, claimants must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a),(d).  A claimant is disabled under the Act when she is

unable to "engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than
12 months."  42 U.S.C. § 423(d)(1)(A); *see also Shaw v. Chater*,
221 F.3d 126, 131-32 (2d Cir. 2000)).  The impairment must be of
"such severity" that the claimant is unable to do her previous
work or engage in any other kind of substantial gainful work.
42 U.S.C. § 423(d)(2)(A).

> "The Commissioner must consider the following in
determining a claimant's entitlement to benefits: '(1) the
objective medical facts [and clinical findings]; (2) diagnoses
or medical opinions based on such facts; (3) subjective evidence
of pain or disability . . . ; and (4) the claimant's educational
background, age, and work experience.'"  *Balodis v. Leavitt*, 704
F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*,
174 F.3d 59, 62 (2d Cir. 1999)).

> Pursuant to regulations promulgated by the
Commissioner, a five-step sequential evaluation process is used
to determine whether the claimant's condition meets the Act's
definition of disability.  *See* 20 C.F.R. § 404.1520.  This
sequential process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant
> is not working, (2) that he has a 'severe impairment,'
> (3) that the impairment is not one [listed in Appendix

> 1 of the regulations] that conclusively requires a
> determination of disability, and (4) that the claimant
> is not capable of continuing in his prior type of work,
> the Commissioner must find him disabled if (5) there is
> not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335

F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted));

*see also* 20 C.F.R. § 404.152(a)(4).  If, at any of the

previously mentioned steps, the answer is "no," then the

analysis stops and the ALJ must find claimant not disabled under

the Act.  During this five-step process, the Commissioner must

consider whether "the combined effect of any such impairment . .

. would be of sufficient severity" to establish eligibility for

Social Security benefits.  20 C.F.R. § 404.1523.  Further, if

the Commissioner does find a combination of impairments, the

combined impact of the impairments, including those that are not

severe (as defined by the regulations), will be considered in

the determination process. 20 C.F.R. § 416.945(a)(2).

        In steps one through four of the sequential five-step

framework, the claimant bears the "general burden of proving . .

. disability."  *Burgess*, 537 F.3d at 128.  In step five, the

burden shifts from the claimant to the Commissioner, requiring

that the Commissioner show that, in light of the claimant's RFC,

age, education, and work experience, the claimant is "able to

engage in gainful employment within the national economy."

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

**b. The ALJ's Disability Determination**

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ determined, at **step one**, that plaintiff had not engaged in substantial gainful activity since January 1, 2014, the alleged onset date.  (Tr. 14; *see* 20 C.F.R. § 404.1571.)

At **step two**, the ALJ found that plaintiff suffered from the severe impairment of schizophrenia because it "causes more than minimal limitations on his ability to undertake basic work activities."  (Tr. 14; *See* 20 C.F.R. § 404.1520(c).)

At **step three**, the ALJ found that plaintiff's mental impairment did not meet or medically equal the medical severity of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.03.[5]  The ALJ discussed at length that the plaintiff had not met the "paragraph B" mental functional analysis criteria.  As the ALJ noted, to satisfy the "paragraph B" listing, a mental impairment must result in at least one extreme or two marked limitations of functioning in: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing themselves.  (Tr. 15; 20 C.F.R. 404.1520(d), 404.1525, 404.1526.)  Citing Dr. Georgiou's

---

[5] To meet Listing 12.03, claimant must satisfy the requirements of Paragraphs A and B of the listing; or alternatively, A and C.  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.03.  (Def. Br. 6 n.2.)

opinion, the ALJ found that plaintiff has mild limitations in understanding, remembering or applying information; and was only moderately limited with regards to interacting with others; concentrating, persisting or maintaining pace; or adapting or managing himself.  (Tr. 15-16.)  Because the ALJ found that plaintiff's mental impairment did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not met.  (Tr. 15.)  The ALJ also determined that the "paragraph C" criteria were not met because "there is no objective evidence to suggest that [plaintiff] has minimal capacity to adapt to changes in his environment or to demands that are not already a part of his daily life."  (Tr. 16.)

At **step four**, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with a few non-exertional limitations.  (Tr. 16-17.)  Due to plaintiff's mental impairment, the ALJ found plaintiff is limited to performing simple, routine, repetitive tasks, in a work environment free of fast-paced production requirements, with only simple few work related decisions, few, if any, changes to the workplace and only occasional interpersonal interaction with members of the general public, coworkers and supervisors. (*Id.*)  Though the ALJ found that plaintiff's medically determinable impairment "could reasonably be expected to cause certain of the alleged symptoms

. . . [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 17.)

In arriving at this RFC, the ALJ assigned "some weight" to the opinion of the psychological consultative examiner, Dr. Georgiou, finding her conclusions were internally and externally "consistent with [the] objective findings." (Tr. 17.)  The ALJ ultimately found, however, that plaintiff was "somewhat more limited" than would appear to be the case from Dr. Georgiou's report, explaining, without reference to medical evidence, that he gave plaintiff the "benefit of the doubt" in his determination.  (Tr. 17.)  Similarly, the ALJ also assigned "some weight" to the non-consulting state examiner, Dr. Harding, but noted that he again gave plaintiff the "benefit of the doubt" and found that plaintiff "may have somewhat greater impairment-related limitations." (Tr. 17.)  The ALJ gave "little weight" to the opinion of the treating provider, Dr. Choudhury, finding his opinion wholly unsupported by the contemporaneous medical records.  (Tr. 18.)  The ALJ also noted, citing authority from other circuits, that Dr. Choudhury's questionnaire was entitled to less weight because it was a checklist form report.

The ALJ accepted the vocational expert's testimony that an individual with plaintiff's RFC would be unable to perform the work of a warehouse worker or construction worker and concluded that plaintiff was not able to return to his past relevant work.  (Tr. 18.)

Lastly, at **step five**, the ALJ found that the plaintiff was capable of performing light work available in the national economy such as a night cleaner, crate liner, and electrode cleaner.  (Tr. 19.)  Thus, ALJ Levey concluded that plaintiff was not disabled within the meaning of the Act.  (Tr. 19.)

### c. The RFC is Not Supported by Medical Opinion Evidence

#### i. *The ALJ did not adequately assess the Paragraph B criteria under listing 12.03.*

Plaintiff asserts that the ALJ erred in his step three determination that plaintiff's impairment did not meet or medically equal Paragraph B, the functional criteria under § 12.03, the listing for schizophrenia and other psychotic disorders.  (ECF No. 16, Plaintiff's Brief, ("Pl. Br.") 3-8.)  Under 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 12.03(B), a claimant's functional limitations are assessed and labeled as "none, mild, moderate, marked, [or] extreme".  20 C.F.R. § 404.1520a (4).  To meet the requirements of Paragraph B, claimant must have either one "extreme" or two "marked" limitations in the following functional areas: understanding,

remembering, and applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  *See Veley v. Saul*, 18-CV-269, 2019 WL 5078204, at *2 (W.D.N.Y. Oct. 10, 2019) (remanding for ALJ's failure to address listing 12.03 regarding claimant's schizophrenia).

Under the social security regulations, a "marked" limitation is a seriously limited ability to function independently, appropriately, effectively and on a sustained basis, whereas an "extreme" limitation is a complete inability to function.  20 C.F.R. § Pt. 404, Subp. P, App'x 1, § 12.00A(2)(b); § 404.1520a(c)(2).  A "moderate" limitation means that the claimant's functioning in an area is "fair."  20 C.F.R. Part 404, Subpart P, App'x 1, §12.00(F)(2)(c).

Plaintiff asserts that he suffers from marked limitations in concentrating, persisting or maintaining pace, and adapting or managing himself, and the ALJ incorrectly concluded he was only moderately limited.[6]  (Pl. Br. 3.) Plaintiff also asserts that the ALJ should have relied on the medical opinion of his treating providers.  (*Id*. at 7-10.) Defendant contends that the ALJ's findings were "reasonably determined" and well-supported by the medical opinion evidence.

---

[6] Because plaintiff does not contend that the ALJ's determinations regarding his ability to understand, remember or apply information, or interact with others, were incorrect, the court does not address those findings.

(ECF No. 18, Defendant's Brief ("Def. Br.") 5-9.)  For the reasons set forth below, the court finds that the ALJ committed legal error and remands for the purpose of reevaluating all the evidence in the record.

Plaintiff asserts that the ALJ's decision was improper because no medical professional evaluated plaintiff's performance in all four functional areas under Paragraph B. (Pl. Br. 4.)  The court respectfully disagrees with plaintiff's assertion, insofar as the ALJ specifically considered the medical opinion evidence regarding plaintiff's limitations in the four areas.  (Tr. 15-17, 307-10.)  Nevertheless, because there is evidence in the record – including Dr. Choudhury's medical assessment (Tr. 309-10) as well as non-medical evidence – that buttresses plaintiff's contentions that he has more than moderate limitations in his functional capacities, which evidence was not adequately addressed in the ALJ's decision, the court finds that the ALJ's decision is not supported by substantial evidence.

1. ***Failure to evaluate Paragraph B criteria under listing 12.03***

   a. *Concentration, Persistence, and Maintaining Pace*

Under the Commissioner's regulations, the functional capacity of concentrating, persisting, and maintaining pace is outlined as follows:

23

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00(E)(3).

In finding that plaintiff was only moderately limited in this domain, the ALJ relied on the contemporaneous medical records from Queens Hospital Center, as well as the reports of Dr. Harding and Dr. Georgiou, to which the ALJ assigned "some weight." (Tr. 17.) The ALJ noted that plaintiff did not report any side effects of his medication to his treating providers. (Tr. 15.) Notably, the ALJ rejected the medical questionnaire of Dr. Choudhury and Ms. Kane, which reported that plaintiff suffered from poor concentration and medication-related fatigue. (*Id.*) The ALJ failed to address various other record evidence substantiating plaintiff's limitations, as set forth below. (Tr. 15, 253-254, 309-10.) Because there was ample evidence in the record that plaintiff has more than a moderate limitation in his capacity to concentrate, persist, and maintain pace, which was not adequately addressed in the ALJ's decision, the court

finds that the ALJ's decision is not supported by substantial evidence.  On remand, the court respectfully directs the ALJ to give due and adequate consideration to the entire record and provide adequate explanations for his findings.

It is well-established that an ALJ may not cherry-pick factual evidence that is refuted by other contrary evidence in the record.  *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010). "While the ALJ is not obligated to 'reconcile explicitly 'every conflicting shred of medical testimony,' he cannot simply . . . choose evidence in the record that supports his conclusions."  *Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  *Montanez v. Berryhill*, 334 F. Supp. 3d 562, 564 (W.D.N.Y. 2018). Here, the ALJ failed to consider that plaintiff attempted to return to his job, and was fired, due to his "inability to listen," (Pl. Br. at 4; Tr. 40, 310), and missed taking prescribed injections on multiple occasions because he "forgot." (Tr. 340, 353.)

The ALJ also appears not to have considered plaintiff's function report, which was filled out by plaintiff's brother, and supports Dr. Choudhury and Ms. Kane's joint assessment that plaintiff had poor concentration.  The function report states that plaintiff slept "all day" due to his

medication's side effects, had to be reminded of doctor visits and of "all important tasks, including taking showers and changing his clothing," and could not follow spoken instructions.  (Tr. 205-06, 211, 309-10.)  Further, plaintiff testified before the ALJ that, since his 2013 schizophrenia diagnosis, he has been unable to continue working due to "lack of concentration, patience, forgetting stuff.  People said they tried to talk to me and I wouldn't listen."  (Tr. 33.) Additionally, plaintiff complained to Dr. Georgiou of regularly sleeping fifteen hours per day, (Tr. 252), and skipped appointments due to his being very "drowsy."  (Tr. 261, 281.) During an appointment with Ms. Kane, plaintiff's mother reported that he "does not wake up on time for most things."  (Tr. 464.) These facts overwhelmingly indicate that plaintiff would require remarkable "rest periods" that would preclude his functional capacity of being able to "work a full day."  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00(E)(3).  Based on the above, the court finds that the ALJ's finding regarding plaintiff's capacity to concentrate, persist, and maintain pace is not supported by substantial evidence.

### b. Adapting and Managing Oneself

Under the Commissioner's regulations, the domain of adapting or managing oneself is defined as follows:

> This area of mental functioning refers to the
> abilities to regulate emotions, control behavior, and
> maintain well-being in a work setting. Examples
> include: responding to demands; adapting to changes;
> managing your psychologically based symptoms;
> distinguishing between acceptable and unacceptable
> work performance; setting realistic goals; making
> plans for yourself independently of others;
> maintaining personal hygiene and attire appropriate
> to a work setting; and being aware of normal hazards
> and taking appropriate precautions. These examples
> illustrate the nature of this area of mental
> functioning.

20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00(E)(4).

In regard to adapting and managing himself, the ALJ found that plaintiff was only moderately limited. (Tr. 15.) The ALJ deferred greatly to Dr. Georgiou's consultative report, which stated that plaintiff could attend to his personal hygiene, prepare simple meals, clean, drive, and use public transportation. (Tr. 253-54.) The ALJ did not credit plaintiff's own statements complaining that he slept most of the day (Tr. 253) or the function report, which described him as requiring reminders to attend appointments and care for his personal hygiene. (Tr. 206.) The ALJ also did not address the fact that the report also stated plaintiff's mother prepared food for him and did his chores. (Tr. 206.) The ALJ assigned "little weight" to Dr. Choudhury's report, which noted that plaintiff was fired when he tried to go back to work, forgets or is otherwise unresponsive to questions, and has disordered

thoughts and limited memory, all of which are salient to
plaintiff's ability to adapt or manage himself.  (Tr. 309-10.)

        Dr. Georgiou's examination report, to which the ALJ
deferred, only briefly noted that plaintiff did not suffer from
impairments in his daily functioning, and did not even mention
plaintiff's *work-related* functionality, *i.e.* plaintiff's ability
to "function independently, appropriately, effectively, and on a
sustained basis" at work.  (Tr. 309-10; 20 C.F.R. §
404.1520a(c)(2).)  The court agrees with plaintiff's assertion
that it was not apparent from the record or Dr. Georgiou's
report that plaintiff's ability to adapt or maintain himself *at
work* was fairly determined because the report only discussed
plaintiff's daily functioning.  (Pl. Br. at 6.)  *See Newson v.
Comm'r of Soc. Sec.*, 17-cv-2918 (FB) 2019 WL 6173400, at *2n.1
(E.D.N.Y. Nov. 20, 2019) (quoting *Bjornson v. Astrue*, 671 F.3d
640, 647 (7th Cir. 2012) ("The critical differences between
activities of daily living and activities in a full-time job are
that a person has more flexibility in scheduling the former than
the latter, can get help..., and is not held to a minimum
standard of performance, as she would be by an employer.")).
The court further finds that the ALJ improperly supplemented Dr.
Georgiou's report with his own "lay opinion" regarding
plaintiff's ability to adapt and manage himself in a work
setting.

The ALJ noted that plaintiff asserted that "his medication causes significant fatigue, he spends most of the day sleeping, and he has difficulty with concentration and memory." (Tr. 16.)  The ALJ, however, disregarded plaintiff's testimony as to his fatigue and difficulties with concentration and memory, due to plaintiff's other testimony that his medication eliminated his visual hallucinations and reduced his auditory hallucinations, that he uses public transportation, and could "probably do his past work" except for the fact that he tires easily.  (Tr. 16.)  The ALJ also relied on the plaintiff's daily activities which the ALJ argued were "inconsistent with the degree of limitation alleged" in determining the RFC. (Def. Br. 15; Tr. 15.)  The ALJ stated the range of daily activities reported by plaintiff included: "regular contact with friends, seeing his children three times weekly, cooking simple meals, and going out with his family." (Tr. 17.)

The ALJ can exercise his discretion in choosing whether to accept plaintiff's subjective statements. *Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009) (summary order) ("[W]here the ALJ's decision to discredit a claimant's subjective complaints is supported by substantial evidence, [the court] must defer to his findings.")  "[I]f the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain

29

that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Fernandez v. Astrue*, No. 11-CV-3896 (DLI), 2013 WL 1291284, at *18 (E.D.N.Y. Mar. 28, 2013) (internal citation omitted).  The ALJ failed to do so here.

The ALJ erred in rejecting portions of plaintiff's testimony merely because he found they were unsupported by the objective medical evidence. *Hudson v. Berryhill*, No. 17-CV-463 (MAT), 2018 WL 4550310, at *6 (W.D.N.Y. Sept. 21, 2018) (internal quotation marks and citation omitted) (finding rejection of "claimant's statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective evidence does not substantiate the claimant's statements" improper).  Further, the court notes that plaintiff's testimony is generally consistent with the significant limitations noted by his treating physician, Dr. Choudhury.  Specifically, plaintiff testified that he saw his children "on the weekend" and "most of the time they go to the playground with my mother or father."  (Tr. 43.)  Plaintiff also testified that he goes out to eat "if my mother is going to take me out." (Tr. 43.)  Additionally, plaintiff testified he does not go out with friends, though he used to before he was diagnosed. (*Id.*)

Further compounding the legal error, the ALJ appears to have credited plaintiff's denial of symptoms. (Pl. Br. 12-13.) The court finds that the ALJ's reliance on certain, selected statements from plaintiff's treatment records is not supported by substantial evidence and the record as a whole; thus, the court remands and respectfully directs the ALJ, on remand, to reconcile plaintiff's denial of symptoms with the record.

As noted in plaintiff's intake assessment with Queens Hospital Center, plaintiff is a "poor historian" of his medical history, and his mother was called upon to provide information regarding plaintiff's history of mental illness and psychiatric treatment, including hospitalization. (Tr. 256.) This is consistent with Dr. Choudhury's finding that plaintiff has disordered thoughts and limited memory. (Tr. 309-10.) Further, in the intake assessment, plaintiff remarked, "I don't like to complain a lot," and denied the presence of any psychotic symptoms, whereas his wife reported that plaintiff was "hearing voices," and his mother reported that he was isolative, not sleeping and unresponsive to questions. (Pl. Br. at 12; Tr. 256.) Further, the ALJ did not examine the fact that plaintiff necessitated a court-ordered medication override during one of his hospitalizations due to his refusal to take medication. (Pl. Br. at 12; Tr. 256.) In light of the foregoing evidence

regarding plaintiff's history of denying or minimizing
psychiatric symptoms, where they clearly exist and/or are
corroborated by plaintiff's family members or physicians, the
ALJ should have evaluated and explained such conflicting
evidence.

On remand, the court respectfully orders the ALJ to
properly evaluate all of the evidence and, if necessary, request
an additional examination or clarification from the consultative
examiner. *Mattioli*, No. 17-CV-1409 (WIG), 2018 WL 5669163, at
*4 (D. Conn. Nov. 1, 2018).

### 2. *The ALJ improperly discounted Dr. Choudhury's opinion*

Plaintiff asserts that the questionnaire completed by
his treating source, Dr. Choudhury, supports a finding that
plaintiff met the Paragraph B criteria, and plaintiff disputes
the ALJ's discounting of the treating source's opinion. (Pl.
Br. 8.) The ALJ declined to give controlling weight to Dr.
Choudhury's opinion, in part because it was presented in a form
report. (Tr. 18.) For the reasons set forth below, the court
finds the ALJ incorrectly concluded that Dr. Choudhury's opinion
was not entitled to controlling weight.

Under the treating physician rule, "'the opinion of a
claimant's treating physician as to the nature and severity of
the impairment is given 'controlling weight' so long as it is
'well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"[7] *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); *see also* 20 C.F.R. §§ 404.1527(c)(2).  If the ALJ does not find a treating source's opinion is entitled to controlling weight, the ALJ must consider how much weight to give the opinion, using factors including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the amount of medical evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a specialist.  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d. Cir. 2019) (quoting *Burgess*, 537 F.3d at 128); *see also* 20 C.F.R. § 404.1527(c)(2).

Additionally, the Commissioner must always provide good reasons for why the treating provider's opinion was not accorded substantial weight.  *Cervini v. Saul,* 17-CV-2128 (JMA) 2020 WL 2615929 at *5 (E.D.N.Y. May 21, 2020) (citing *Schaal*, 134 F.3d at 501 (2d Cir. 1998)).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'"  *Greek*, 802 F.3d at 375

---

[7]Because plaintiff's application for disability and disability insurance benefits was filed before March 27, 2017, the recent changes reflected in C.F.R. § 404.1520c do not apply, and under C.F.R. § 404.1527(a)(2)(c), the treating source's opinion is generally assigned added or possibly controlling weight.

(quoting *Burgess*, 537 F.3d at 129-30).  The ALJ's decision need not explicitly discuss the factors set forth in § 404.1527(c)(2) as long as good reasons are given to disregard the rule. *Crowell v. Comm'r of Soc. Sec.,* 705 F. App'x 34, 35 (2d Cir. 2017) ("While the ALJ did not explicitly discuss the treating physician rule, he nonetheless stated that [the physician's] opinion ... was contradictory to the rest of the record evidence."); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (internal citations omitted).

The medical opinion of Dr. Choudhury, as the treating physician, must be "analyzed according to the treating physician rule." *Jackson v. Colvin*, 14-cv-00055 (MAT) 2016 WL 1578748 at *4 (W.D.N.Y. Apr. 20, 2016) (remanding for ALJ's failure to apply treating physician rule to all three of the treating physician's opinions).  Though ALJ Levey credited the findings contained within Dr. Choudhury's contemporaneous medical records, (*see* Tr. 17-18, 311-475), he gave "little weight" to Dr. Choudhury's form report.  (Tr. 18, 309-10.)  Defendant contends that the ALJ considered Dr. Choudhury's report and provided good reasons for not permitting the report the prevailing weight, namely that his opinion was not supported by the treatment records.  (Def. Br. at 8.)  The court disagrees.

The ALJ explained, in his decision, that Dr. Choudhury's form report contradicted plaintiff's hearing

testimony and the progress reports.  (Tr. 18.)  However, the ALJ did not expressly consider the other *Burgess* factors in according so "little weight" to the report, such as the frequency, length, nature or extent of plaintiff's years-long treating relationship with Dr. Choudhury and Ms. Kane.  *Tammy H. v. Comm'r of Soc. Sec.*, 18-CV-851 (ATB) 2019 WL 4142639 at *9 (N.D.N.Y. Aug. 30, 2019).  Upon a review of the record, the court finds the ALJ improperly denied controlling weight to Dr. Choudhury's form report, which found that plaintiff was significantly limited in his occupational, performance, and personal-social abilities.  Among other areas, Dr. Choudhury found that plaintiff had a fair or poor ability to interact with supervisors and the public, deal with work stresses, function independently, maintain attention/concentration, understand, remember and carry out job instructions, and demonstrate reliability.  (Tr. 309-10.)  The form report was supported by other evidence on the record such as the function report filled out by plaintiff's brother, as well as plaintiff's hearing testimony, and should have been accorded greater weight under the *Burgess* factors.  (Tr. 204-223, 33-34, 309-10.)

In addition, though the ALJ correctly noted that form reports are generally disfavored within the Second Circuit, *Klodzinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008) (summary order), courts within this circuit have held that a

checklist form that provides more detail than checked-off boxes
is entitled to greater weight under the regulations.  *See, e.g.*,
*Brady v. Comm'r of Soc. Sec.*, 18-cv-01340, 2020 WL 613935 at *5
(W.D.N.Y. Feb. 10, 2020) (a form that "provided more narrative
and detail on the form than just checkboxes could be entitled to
more weight"); *McGee v. Comm'r*, 18-CV-448, 2019 WL 3450964, at
*5 (W.D.N.Y. Jul. 21, 2019) (reliance on the treating
physician's form report would have been justified because it was
supported by evidence in the record and accompanied by a note);
20 C.F.R. §§ 404.1527, 416.927(c)(3) (noting that a medical
opinion is properly entitled to less weight when it lacks a
supporting explanation, such as a checklist form).  Here, the
ALJ would have been justified in assigning greater weight to Dr.
Choudhury's form report, which went beyond a mere checklist, but
actually contained supplemental handwritten notes that further
clarified plaintiff's functional limitations.  (Tr. 309-10.)

        Further, given the ALJ's finding that Dr. Choudhury's
opinion was internally inconsistent with his treatment notes
and/or inconsistent with other evidence in the record, the ALJ
should have explained his finding and re-contacted Dr. Choudhury
to further develop or reconcile the record.  *Sweet v. Astrue*, 32
F. Supp. 3d 303, 315 (N.D.N.Y. 2012) (finding that the
assessment of the treating psychologist was the central piece of
evidence in this case and the ALJ was obliged to ensure full

development of the record before assigning that assessment
"little weight"); 20 C.F.R. § 404.1520b *et seq.*  As the relevant
regulations specify, where the record is either incomplete or
inconsistent, additional actions "may need" to be taken,
including "recontact[ing the] medical source"; "request[ing]
additional existing evidence"; "ask[ing claimant] to undergo a
consultative examination"; or "ask[ing claimant] or others for
more information."  20 C.F.R. § 404.1520b(b)(2); *see also
Pettaway v. Colvin*, No. 12-CV-2914 (NGG), 2014 WL 2526617, at *5
(E.D.N.Y. June 4, 2014) (citation and internal quotation marks
omitted).  Moreover, "the ALJ's duty to develop the record is
enhanced when the disability in question is a psychiatric
impairment." *Champion v. Berryhill,* No. 16-CV-4723, 2017 WL
4404473, at *16 (S.D.N.Y. Sept. 14, 2017) (internal citations
omitted).  Thus, the court finds that the ALJ did not meet his
burden to develop the record by failing to recontact Dr.
Choudhury to resolve the purported discrepancies between Dr.
Choudhury's conflicting reports.  (*See* Tr. 309-10.  *Contra* Tr.
311-475.)

　　　　For the foregoing reasons, the court finds the ALJ
incorrectly concluded that Dr. Choudhury's opinion should not
have been given controlling weight, and remands for the ALJ to
further develop the record and state good reasons for

disregarding the treating source's opinion.  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

### 3. *The ALJ's RFC determination is not supported by substantial evidence.*

Plaintiff asserts that the ALJ improperly assigned more weight to Dr. Georgiou's and Dr. Harding's reports than to plaintiff's treating physician.  (Pl. Br. 5; Tr. 18.)  The court agrees, and also finds that the ALJ, having discounted all of the professional opinions of record to "little" or "some" weight, committed legal error in supplanting all of the professional opinions with his own lay opinion.  For these reasons, the court remands for the ALJ to properly weigh and consider the medical opinion evidence of record.

In determining a disability claim, an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record *as a whole*," and thus, an ALJ's RFC determination need not track any one medical opinion. *Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (summary order) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (emphasis added).  Though the ALJ's opinion need not follow any specific medical opinion, he may not "arbitrarily substitute his own judgment for a competent medical opinion."  *Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

*See also Flynn v. Comm'r of Soc. Sec. Admin.*, 17-1863-cv 729
Fed. App'x. 119 (Mem)(2d Cir. 2018)(summary order) (quoting *Shaw
v. Charter*, 221 F.3d 126, 134 (2d Cir. 2000) ("Neither the trial
judge nor the ALJ is permitted to substitute his own expertise
or view of the medical proof for the treating physician's
opinion.").

In the instant case, the court cannot discern how the
ALJ reached his RFC determination, which is seemingly
unsupported by any particular medical opinion of record.  The
ALJ stated, in a cursory manner, that he assigned "some weight"
to Dr. Georgiou's opinion because it was consistent with
unspecified objective findings in the record.  (Tr. 17.)
Moreover, the ALJ did not explain why he assigned "some weight"
to Dr. Harding's report, the State Agency consultant who did not
examine plaintiff.  (*Id.*)  Dr. Georgiou examined plaintiff on
one day, and Dr. Harding did not examine plaintiff at all.
Furthermore, the ALJ ultimately concluded that plaintiff was not
disabled under the Act, even though he acknowledged that the
record indicates that "claimant may have somewhat greater
impairment-related limitations" than both Dr. Harding's and Dr.
Georgiou's opinions would indicate.  (Tr. 17.)  The court cannot
fathom the ALJ's reasons for specifically discounting both Dr.
Harding's and Dr. Georgiou's opinions, which the ALJ regarded as
overly harsh, while purportedly giving plaintiff "the benefit of

39

the doubt," yet nevertheless concluding that plaintiff is not disabled under the Act.

If the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Santiago v. Saul*, 18-CV-6631 (MJP) 2020 WL 1503232, at *4 (W.D.N.Y. Mar. 30, 2020) (quoting Soc. Sec. Ruling 96-8p (1996)).  Additionally, where the ALJ adopts only parts of the opinion, he must provide explanation for why the other portions were rejected.  *Id.*  Thus, the ALJ was required to explain why Dr. Choudhury's opinion was not adopted and explain his partial rejection of Dr. Harding's and Dr. Georgiou's opinions as well.  *See Ferraris v. Heckler*, 728 F.2d 592, 587 (2d Cir. 1984); see also *Williams v. Astrue*, No. 09-CV-3997, 2010 WL 5126208, at *17-19 (E.D.N.Y. December 9, 2010) (finding the ALJ's failure to reconcile materially divergent RFC opinions of plaintiff's treating physician and non-examining medical expert to be a ground for remand).

"Where the ALJ explains why he credited some portions of the medical opinion evidence and did not credit others, he has not substituted his own opinion for that of a medical source." *Riley v. Comm'r of Soc. Sec.*, No. 18-CV-6538-MJP, 2020 WL 1061492, at *8 (W.D.N.Y. Mar. 5, 2020) (citing *Rivera v. Berryhill*, 312 F. Supp. 3d 375, 380 (W.D.N.Y. 2018) (finding that ALJ's determinations with respect to weighing of opinion

evidence was proper where the "ALJ discussed the medical opinion evidence, set forth his reasoning for the weight afforded to each opinion, and cited specific evidence in the record which supported his determination.")). This case is dissimilar to *Riley,* where the ALJ carefully reviewed the medical evidence of record, and explained why he credited some portions of the opinion evidence over others.

Here, though the ALJ reviewed the evidence, the decision does not adequately set forth his reasoning. Rather, the decision merely indicates the ALJ gave plaintiff the "benefit of the doubt", or that the RFC was based on the evidence generally. (Tr. 18.)  For the foregoing reasons, the court remands for the ALJ to properly weigh, consider, and explain his findings regarding the medical opinion evidence of record.

### CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further administrative proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or

the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 82–83 (quoting *Pratts*, 94 F.3d at 39) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39.  If the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits.  *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *see also Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

Because the court finds that the ALJ did not develop the record with regard to plaintiff's inconsistent medical opinion evidence, did not properly weigh the remaining opinion evidence, and supplanted his own opinion for the RFC determination, the court GRANTS plaintiff's cross-motion, DENIES defendant's motion, and REMANDS this case for further proceedings.  The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff and close this case.

**SO ORDERED.**

Dated:     June 8, 2020
           Brooklyn, New York

                                        _____/s/_____
                                        Hon. Kiyo A. Matsumoto
                                        United States District Judge